May it please the Court. My name is Brian Mosley. I'm here as a student from the University of Arizona College of Law on behalf of their pro bono appellate clinic under the supervision of Dean Willie Jordan Curtis. I am representing the appellant in this matter, Ms. Dana Padula. Although she was too sick to attend today, her family and friends are in attendance. And thank you for your pro bono representation. Thank you. And with the Court's permission, I would like to reserve three minutes of my time. When Ms. Padula was just a freshman in high school, she started to have trouble with her principal and with the reaction that she got from the school and the school district. When she was just 16 years old, her and 21 other plaintiffs filed suit against the school district, against the principal. They were being harassed and their complaints were not being heard. Over six years later, at the end of trial, she personally was assigned all of the costs, over $23,000. We're asking this Court to reverse that determination, that the $23,000 in costs not be assigned to her, for two primary reasons. First, that she is indigent, and second, that there was misconduct and impropriety on behalf of the defendants. What do you – what amount of costs do you think should have been imposed on her? It's difficult to say what amount would be appropriate. The problem with indigence is not whether the amount of cost is exactly what was incurred during the course of litigation, but whether it's fair, equitable, and reasonable for an indigent plaintiff to be asked to bear that amount of costs. Well, moving aside indigence, I mean, you – and I recognize your misconduct argument, but at the end of the day, there seems to be – do you agree that the amount was correct, or do you think that the district court should have shaved the amount and perhaps allocated it differently? No, we definitely take issue with many of the items that were charged specifically to her, and we'll talk about that as well, that the opposition to this brief noted that many of these came from other plaintiffs. Right. Other people who were involved earlier. There were stipulations as those people left litigation that all parties would be bearing their own costs, but then they were assigned. So we don't agree that the amount was appropriate. I guess my question, maybe I'm not putting it artfully, is have you done the calculation, taking into consideration all of your arguments, have you done the calculation to determine what you think the appropriate amount would have been had it been properly allocated by the district court? No, we don't have an exact number, and the difficulty is because the bill of costs that was submitted was difficult to interpret and to find who it should have belonged to. There wasn't enough information provided. In terms of the indigence, at the time that the bill of costs was imposed on her, she was making $640 a month, $644. This represents over 3 years of her income to be paying $23,000. She was not able to meet her own expenses. And this Court has recognized in Stanley v. University of Southern California and then reaffirmed that in Save Our Valley v. Transit Sound that the district court abuses discretion when it fails to recognize that the presumption in favor of awarding costs has been rebutted.   that amount of money. How do we know she was making that amount of money? Because she submitted it to the court in her filing. I understood the judge said, but the document wasn't signed. Yes. So the initial bill of costs was submitted. She submitted her pro bono counsel at trial submitted an objection to the initial bill of costs, and she submitted a statement saying that she was indigent. It was unsigned. She failed to sign it. If it's not signed, what's the significance of it? The significance is that later she made multiple filings. She submitted that document again signed. A couple months later, she submitted more documentation for an informed apoperous determination, and the Court considered all those. And, in fact, in the Court's determination for the assignment of costs, it said we reference our earlier reasoning under the informed apoperous determination. And so the Court was considering the information that had been filed there, and it had two occasions where she had signed, under penalty of perjury of law, this information. Those are in our separate reply. But what do you want us to do? We would ask that the Court reverse the assignment of costs as a whole because of her indigence. So you want us to say she doesn't pay anything? At a minimum, we would ask that the Court abuses you find that the district court abuses discretion by not recognizing her indigence, by improperly recognizing  Specifically here, in that informed apoperous determination, the Court considered whether or not other people were able to provide support for her in order that she could proceed without the Court's assistance in informed apoperous. And that's an appropriate consideration in that case. Well, I think Judge Schroeder asks the same question that's on my mind, too. If we agree that the judge should have considered her indigence, that doesn't mean she's off the hook. It just means the judge has to go back and take it into account. She might get socked with it again or she might not, but he's got to dot the i's and cross the t's. Do I understand that correctly? It is possible that that is a correct outcome. In Stanley v. University of Southern California, it was remanded. They found that the district court had abused its discretion. But are you arguing that as a matter of law, given her status, her impoverished status, that she should not have to pay anything? I'm arguing that as a matter of law, the presumption should have been gone, that because of her indigence, there should no longer have been a presumption in favor of awarding it, that the court should have made a determination of what was appropriate instead of proceeding as though the presumption were still in full effect. Okay. So that sounds like she could still get stuck for something. It's certainly possible that that would still be an equitable result for her to receive some amount of costs. That's correct. So in addition to that, the district court actually did consider her indigence. He just rejected it. Go ahead. I'm sorry. Go ahead. No, no, please. Because you can't say, well, he didn't take it into consideration. He just he considered the issue of indigence and rejected it. Correct. So how are we supposed to review that? We're supposed to review the errors that he made in considering her indigence. As I was starting to say earlier, he referenced his earlier determination under inform hypocrisy. And there it's improper to consider whether other parties can contribute to her financial ability to proceed. But there the court didn't even decide that she was indigent or not. It decided the matter on other grounds. When she submitted more information about her indigent status, the court rejected those filings and said it didn't want any more information on her indigence because that was not the dispositive issue in the inform hypocrisy determination. So the court never decided whether she was indigent there, and it was relying on case law specific to inform hypocrisy and incorporated that here. So you think it was a legal error to consider the IFP proceedings? I believe that incorporating the same logic, yes. Because those case laws say, should someone else be paying for this? If so, then you should not proceed inform hypocrisy. But here the assignment of costs is made directly to her, and the only question is whether she personally can pay. The court had already excused the other family members who were referenced here. They were parties, and the court excused them without assigning costs to them. And so it's inappropriate now for the court to consider whether those other parties who had been dismissed, who are no longer before the court, should be asked to contribute to this cost to determine whether it's reasonable or not. The second issue has to do with misconduct or impropriety on the other side. The initial bill of costs was for over $36,000. After an initial objection, they readily admitted that over $10,000 of the costs were completely unsupported by case law, inappropriate, and not correct, and so they withdrew those in an amended bill of costs. In that amended bill of costs, they still included an exaggerated per-copy sheet rate of 30 cents per page that the court found to be excessive. And so the question becomes, at what point is the inclusion of too many frivolous and exaggerated costs rebut that presumption again? But here, over a third of the costs admitted initially were found to be unsupported or exaggerated. And the court here said that it was looking for some level of bad faith, that this was done intentionally or with some kind of malice on the part of the defendants. But we would argue that misconduct or impropriety is simply in submitting a bill of costs that contains charges that are not covered, contains charges that are exaggerated, that were not needed. They can't make a mistake and then correct it, in your view? I believe that they can make a mistake. And the court – but the problem is the court here said, we will not consider a few line items, mistakes, as you say, to be the kind of bad faith that we think is required. We're arguing that bad faith is not required, that misconduct alone, that impropriety that, when over a third of the costs are wrong, that it should start to rebut that presumption. I mean, for instance, if they were to submit a bill of costs that was half wrong and only half of the costs that they submitted were appropriate, would it still be correct for the court to assume that the presumption is still in full effect, that that was a little mistake there? I mean, we're talking over $12,000 that the court found were incorrect, that were exaggerated. The court didn't find the first $10,000 were incorrect. The defendants admitted that and withdrew them. Another $2,000-plus in exaggerated expenses the court found were excessive. And so our position is that, at this point, over a third of the costs, the initial costs admitted, were found to be inappropriate or exaggerated. And so the presumption no longer is there. And, again, the court abused its discretion by saying, this doesn't look like bad faith to us. It doesn't matter that over – essentially that over a third of their costs that they submitted were incorrect and unsupported. We're just going to assume that the other two-thirds must be correct. And so for those two primary reasons, because of our indigence and because of this misconduct impropriety, we would ask that the presumption be entirely rebutted. As you say, in the alternative, we ask that the cost assignment be vacated and that it be remanded to the court for redetermination. That redetermination, in addition to properly considering indigence and misconduct, should also consider the role of the other 21 plaintiffs that were involved in this action. With respect to – okay. Let me ask you on the misconduct. I had a little problem as to what deference are we to give to the district court's conclusion that this was – that there was not misconduct. Because he was there. This was a case that was tried to a jury, and he presided over all aspects of it. So doesn't – aren't we to defer, to some extent, to what he says is appropriate cost? Yes, Your Honor. This is an abuse of discretion, and it is based on their understanding what they saw in the court there. What we're asking the court to say is that the court made an error in saying that it must be bad faith, that misconduct – the only kind of misconduct that could be considered is when they affirmatively are doing something with a malintent. That here, the inclusion of a bill that was just simply poorly prepared, that included charges that should have never been included, should also be enough to rebut that presumption and to counteract the presumption. So that is our position there. The other issue is the 21 other plaintiffs. I'm sorry. I thought it was your position that because part of it – he recognized that part of it was not appropriate, that it was, therefore, an error on his part to say that the rest of it was okay. Yes, that's correct. So – And I'm just asking why wouldn't we defer to him as to that judgment? He looked at it. He says, this is erroneous. This is not correct, but the rest of it I'm going to accept. Judges do that all the time. Yes. Well, we would ask that the court clarify that issue, because here the district court cited the Seventh Circuit case, Overbrook v. Heimbecker, where the counsel had acted in strange ways throughout the trial and made all kinds of weird things. And made all kinds of motions that were unnecessary and other things such as this. But we're saying that the filing of the bill of costs itself should be considered. When this is supposed to be something that's done quickly and as a matter of course that the costs are supposed to be signed with an affidavit that these are true and correct and have been carefully submitted and they aren't, then that presumption should go away. And it shouldn't be so clear and it shouldn't be such an easy determination. Thank you, counsel. Thank you. Please, the Court. I'm John Kelly with the appellees. After seven years of litigation, five days of jury trial, the jury took 90 minutes or less to find in favor of the defense in this matter. As per Rule 54, in the usual course of matters, we submitted a cost bill. Errors were pointed out. We submitted an amended cost bill. The Court, following the usual course of action, awarded us costs. Strong presumption in favor of it, and a trial court has discretion on whether or not to reduce those costs or eliminate them based on several factors. The Court, though, is not required, if it awards costs, to even list reasons why it is awarding costs, because it's such the norm. But here the Court issued an 11-page decision going through each of the arguments that was made, considering them, and rejecting them. One of the reasons given is that the financial affidavit wasn't signed, right? Yes, Your Honor. However, there was a previously signed financial affidavit. There were three or four submissions by Ms. Padula or her attorney regarding But then there's a lot of signed affidavits that he could have considered if he wanted to. The first one was not signed. Excuse me. And then one submitted by Ms. Padula didn't have the penalty of perjury language required for an affidavit. And I believe there was a second one was the first one was submitted a second time unsigned. However you slice it, there's at least one that he could have considered, isn't there? Yes, I believe there is. Now, and he incorporated his ruling on the request to proceed in form of paupers, which did contain a signed declaration. Yes. Okay. Since he incorporated the ruling, why shouldn't he have taken a look at the affidavit? Well, he did look at the affidavit. He found it to be pro forma. He found it to be, he found very problems with it, including the fact that she was spending twice as much money as her income. Okay. And then he said he, back in the informal paupers ruling, he said, well, I could have, I could have asked for clarification. Right. He said he could have asked for clarification, but he didn't find that any appeal would be in good faith. Okay. That's because we're dealing with frivolous appeal. Now that we're talking about whether she can afford costs, why shouldn't he have said there appears to be some kind of discrepancy here? Can you explain it? Well, there were a number of different reasons why he didn't do that. One was because of the fact that the jury had only been out for 90 minutes. He considered that the matter of the case was a matter of time. Okay. That bears on whether she had a good claim. It doesn't bear on whether she's indigent. Well, there's a penumbrum of reasons. What case, what case says that the amount of time the jury is out has any bearing on the right to costs? What's your best case that says that? I know there is a particular case that says that, Your Honor, but the judge was saying that because as to, there was the Association of Mexican Educators v. State of California, which talked about that case they denied costs because they said the issues were novel and close. Right, right, right. But there's nothing that talks about how long a jury was out in terms of a cost calculation. That was the Court's interpretation of applying that particular case by saying, well, in one case the issues were close and the court judge was saying here the issues were not close. And that was his interpretation of the jury coming back in less than 90 minutes. Again, that bears on the closeness. It doesn't bear on indigency. That's correct. So is an indigency one of the things he's supposed to take into account? I think he's supposed to take into account her income expense, her income or expenses, her ability to pay. Which he specifically declined to do. Well, she had submitted documents which he found to be inadequate, and she had already made three or four filings with the court, and even after four filings he still found them to be incomplete. And he got, I don't want to use the word tired, but he got, you know, tired of receiving repeated applications from her that were, you know. There's no question he's tired of the case. I gather that from reading the record. But, you know, he still has to play the game fair and square, you know. He still has a job to do his duty to just review the claim and exercise his discretion, which is what he did. He said he exercised his discretion and reviewed her claim of being indigent and decided that this wasn't a case where that was going to be a factor that he was going to deny cause. Did she get stuck with all the costs, essentially? Essentially, yes. Is that fair when she was one of multiple plaintiffs? Well, there's a couple different ways to view it. First of all, there were 22 plaintiffs. One of them dropped out before the complaint was even signed. Several of them dropped out by stipulation. None of them were left by the time of trial. So the majority of costs, or a lot of the costs, were incurred, were trial expenses. But this is an issue that wasn't raised to the trial court. She had an attorney when she filed in opposition to the cost bill. She didn't argue these other plaintiffs should have borne this expense. In fact, you know, most of those other plaintiffs were, in fact, her relatives. Her parents were both parties at one point. Her cousins were both parties. They weren't, you know, she wasn't stepping up saying, no, don't tax me, tax my parents. No, she wasn't doing that. It was never an issue they raised to the trial court. And, you know, the court can't consider issues it doesn't raise. I mean, I don't know how one reviews something that was never brought to one's attention. But had she wanted to do so, she certainly could have. But I've never seen a case that says you have to parcel them out. She was the one who decided for whatever reason not to accept a settlement and waive costs and drop out. She took the risk of going to trial that she might lose. Well, except that I must say when I was the practice in our district was if you didn't use the deposition at trial, you weren't going to get costs. And that was the sense of local rule. And here you've got all sorts of costs that are associated with different plaintiffs that have nothing to do with the actual trial of this claim. So you're, in a sense, it's a punishment for her not settling, which I think probably is not the right kind of incentive we want to have in place in the system. Well, I take a couple of different points there, Your Honor. First of all, the test is whether the costs were reasonable at the time they were incurred. If they're a plaintiff at the time the deposition is taken, then it's certainly going to be relevant. Second, Ms. Padula listed in interrogatories something like 200 witnesses to support her case in interrogatories, including everybody who was deposed. So if you just, if you just had her case, I took her interrogatory, I wanted to pose probably most of the same people. Third, at trial, while the trial was supposed to be just about Dana, the trial court led in evidence of alleged conduct against people going back more than 10 years. So many of the former plaintiffs all testified, well, many of the former plaintiffs testified at trial. Right. So if you pare down to the depositions that were actually used at trial, actually used at trial, and the costs, you don't get to a, I just can't believe you get to that high a figure. Not every single solitary deposition was used at trial. I will concede that point. Many of them were, and all of them were taken, were justified at the time based on the fact that they were either plaintiffs in the case or, and or, actually they were both, either plaintiffs in the case or they were listed by Ms. Padula as witnesses to her case, specifically. And taking a witness's deposition is certainly reasonable. If she is a lawyer. So let me ask you this. Why, do you have any doubt that, do you think she can pay this? Well, I don't know. I know that her, that her parents paid her previous attorney, according to the declaration, they filed over $200,000. And her parents are obviously supporting her at the time of this trial. But your judgment is against her, not her parents. That's true. So my question to you is, do you think there's any reasonable prospect she can pay this? I don't know what she's been doing for the last two years. For all I know, she's gotten a decent job and makes a decent income. It's been several years. I just don't know. She talked about going back to school at one point. In fact, I think she was going to the local school. So let's assume for the sake of argument she is indigent. All right. So where does that get you in this case? Well, just because. Honestly, where does that get you in this case? Well, just because someone's indigent, there's no law that requires a court to then say, well, you're indigent, so you can bring all the kind of lawsuits you want to. And you just get off the job. I think Judge Thomas is asking why he's spending more attorney's fees and time going after blood odds, trying to get blood odds of turnip, I think is what he's asking you. Well, there are various factors involved. But I can say that, you know, we don't know what the future is. She may have money. She may not. She may get money in the future. We can always get a lien. We can always try to execute a judgment sometime in the future against her. But that's, you know, it's not my goal. So did the district have insurance for this? The district was part of a pooling agreement that covers the first $100,000 or $200,000. So they contribute money. Others, public entities do. And then it goes to an excess layer beyond that. And the fees were paid. All the costs were covered by this pooling agreement, right? You aren't out-of-pocket. The taxpayers are not out-of-pocket on this, right? Well, the ---- I'm not saying it's relevant. I'm just asking. Well, first of all, I think the school district has a deductible. It could have been up to $10,000. Again, there's so many different coverages, I can't say. Second, the school districts pay into the pool. So that is taxpayer money directly going into that. And then they have to buy the insurance, which is, again, taxpayer money on top of that. So it is taxpayer money, one way or another. So a $10,000 deductible is the most direct we have that you're probably out-of-pocket. Again, there's so many different types of coverages. I can't say that this particular one ---- Well, you're going to buy the insurance anyway. And you're going to pay into the pool anyway. So ---- Well, they have to, yes. Okay. Okay. Has there been any effort to try to resolve this? Yes, Your Honor. I mean, if you really want to know, I mean, I know we offered to waive the cost five months ago. And they said they ---- we met with blank stares. We told the court mediator that we would waive the cost. I don't know why we're here, really, because we told the mediator we would do that. And we ---- they said they transmitted on to the other side, and we never heard back. So you're standing here today and telling us you'll still waive the cost? Is that now ---- Five months ago, the carrier was willing to do that. But I told them if I had to come down here and do this, that we weren't going to waive the cost. So five months ago, eight months ago, we might have been willing to do that. But there was a time limit on that. And so that expired a long time ago. I see my time is ---- I've still got a few more minutes, but I don't have any more to say. I don't see any more questions. Thank you. Refresh me on one point. Did we ---- did our court grant IFP on this? This court gave her the ability for pro bono counsel, you know, and there were so many filings while here, I don't remember which ---- what the reasoning was. I was trying to look that up. I didn't run it electronically. I couldn't get it. After she submitted a, you know, 500-page or 400-page brief with attachments, including attachments, I think the court said maybe she needs someone to help her. Well, if we granted in form of POPRIS, let's assume for the sake of argument that our court found that she was indigent, what ---- how does that bear on this case? Well, again, the district court has discretion, you know, to deny the cost because she's poor, but it doesn't have to do it. There's no law that says just because she can't afford to pay it, you have to grant it, because if you find that, if you find you must make a rule that if someone's poor, you don't have to pay costs, that would just give people who have no money, you know, free will to file the cases they wanted with no penalty. That, well, gee, I can go to court, and if I lose, well, I'm poor, I can't pay anything. No one's going to tax me, so I don't have to worry about it. Well, if you're poor, you're not going to pay anyway. Well, maybe. I'm not sure that that's a deterrent. Thank you. Thank you. Thank you, Mr. Keller. Mr. Mosley, is it true they offered delayed costs early on? I don't believe that's before the Court on the record. I mean, we did have discussions about that, and whatever conversations we had with our client are not before the Court for those purposes. I don't – I guess I don't know how to respond to that besides that we did have discussions. Let me ask you this. Was – were you part of this, or was that just your client who was part of the initial discussions, if you know? I was part of it, yes. Okay. Thank you. Yes. A few points here. Let me try to ask the question another way. Are you pursuing costs that they offered previously to waive? Subject to certain conditions, yes. But the client has made, in addition to the filings that we are pursuing here, the client's made additional pro se filings that she also asked the Court to consider as well. So there are other issues that are important to her. In response to a couple of things that were said, it was mentioned that this was not – the other plaintiffs were not objected to in the initial filing, and that is incorrect. As we say on page 11 of our reply motion, we quote from that response, it says that they do not appear to apply to this case, and, quote, they relate to dispositions of parties long dismissed from this case, which should never have been included. So those absolutely were objected to, and they are properly considered by this Court. Again, the appropriate consideration in terms of indigence is the ability of the plaintiff at the time of the determination. Specifically in Stanley, this Court found that it didn't matter that the plaintiff there was the head basketball coach at USC, that she had been negotiating in a contract for over $100,000. It didn't matter. At the time of the thing, she had no income, and she was taxed $46,000. That was an abuse of discretion, because at the time, she was indigent, and they couldn't take consideration of what Ms. Padula's situation might be now, what somebody else might be able to pay. Finally, these are obviously important issues to her. This began when she was 16 years old, and she's continuing it because she feels it is important.  For her, this was an important issue. She felt that she was being mistreated by her principal and by the district, that her concerns were being laughed off. In the record, you will see newspaper clippings that the principal left, that changes were made, that this did make a change in the small community and in the school district. And so, although she didn't prevail at trial, she did something very important, and she pushed this forward. The issue with the bill of costs that we're arguing primarily today is that although there's a presumption, it's not an inflexible mandate that must occur in all cases. Here, she was indigent, and the costs bill that was submitted was improper. And the costs bill, the bill of costs, should not be a blank check that is just approved. Thank you, Your Honor. Thank you for your argument. No, I'm sorry you can't. You're not counsel, but we appreciate you attending today. Thank you all for your argument this morning. And the case just heard will be submitted for decision.
judges: Schroeder, Thomas, Silverman